IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TARA SWEAT and JEREMY
HUNTER SWEAT,

    Plaintiffs,

v.  No. 14-1253

OFFICER LARRY BUTLER and
CITY OF CRUMP, TENNESSEE,

    Defendants.

_____

ORDER GRANTING MOTION TO DISMISS BY
DEFENDANT, CITY OF CRUMP, TENNESSEE
_____

Plaintiffs, Tara Sweat and Jeremy Hunter Sweat, brought this action against the City of Crump, Tennessee, and Larry Butler, a former Crump police officer, in a complaint filed on September 26, 2014, alleging violations of 42 U.S.C. § 1983 and Tennessee tort law. (Docket Entry ("D.E.") 1.) Before the Court is the October 20, 2014, motion of Crump to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (D.E. 7), to which Plaintiffs have responded, (D.E. 9).

**I. Legal Standard**

Rule 12 permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, a district court should "construe [the] complaint in the light most favorable" to the non-moving party and accept all "well-pled allegations as true." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010) (citing *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir.

1

2008)). A claim is well-pled when "it contains 'either direct or inferential allegations respecting all material elements' necessary for recovery under a viable legal theory." *Phil. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Terry*, 604 F.3d at 275–76). The facts in the complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Terry*, 604 F.3d at 275–76). The complaint, therefore, must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).[1]

## II. Facts Alleged

Plaintiffs made the following allegations in their complaint. On September 27, 2013, Tara Sweat was driving to work when Butler performed a traffic stop on her vehicle. (D.E. 1 ¶¶ 7–8.) After she "pulled over at the first well-lit area, a nearby gas station[,] . . . Butler approached [her] vehicle with his gun drawn, telling her to 'get the f—k out of the car.'" (*Id.* ¶¶ 9–10.) The officer

---

[1] The Sweats argue that motions to dismiss in civil rights cases "are to be carefully scrutinized and only granted in extreme circumstances." (D.E. 9-1 at 3) (citing *Mercado v. Kingsley Area Sch./Traverse City Pub. Sch. Adult Educ. Consortium*, 727 F. Supp. 335 (W.D. Mich. 1989); *Mahoney v. Nat'l Org. for Women*, 681 F. Supp. 129 (D. Conn. 1987); *U.S. Gen., Inc. v. Schroeder*, 400 F. Supp. 713 (E.D. Wis. 1975)). After *Twombly* and *Iqbal*, however, courts in this circuit have routinely rejected arguments that a more lenient pleading standard applies to § 1983 claims. *See, e.g.*, *Vidal v. Lexington Fayette Urban Cnty. Gov't*, No. CIV.A. 5:13-117-DCR, 2014 WL 4418113, at *2–3 (E.D. Ky. Sept. 8, 2014); *Hamer v. Cnty. of Kent*, No. 1:13-CV-504, 2014 WL 1276563, at *6 (W.D. Mich. Mar. 27, 2014); *Scott v. Giant Eagle, Inc.*, No. 1:12–cv–3074, 2013 WL 1874853, at *4 (N.D. Ohio May 3, 2013); *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). Moreover, *Iqbal* itself concerned a civil rights case. *See Iqbal*, 556 U.S. at 668. While the plaintiff in *Iqbal* pled a *Bivens* claim rather than one under § 1983, *see id.*, "the same legal principles," with limited exceptions not applicable here, apply to both types of claims, *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). The Sweats have not provided any reason that § 1983 claims should be treated differently than *Bivens* claims for 12(b)(6) purposes, and no such reason is otherwise apparent.

would not tell her "why [she] was pulled over," and, while "yelling, cursing, and spitting in her face," he "forcibly pull[ed her] from the car" without allowing her to unbuckle her seatbelt, which caused "bruising and abrasions." (*Id.* ¶¶ 11–12.) After Butler performed field sobriety tests, he arrested Ms. Sweat for driving under the influence. (*Id.* ¶ 14.) While Ms. Sweat was handcuffed in the back of Butler's patrol car, her son, Jeremy Hunter Sweat, stopped his vehicle, containing a minor passenger, at the gas station "to make sure his [m]other had not had a car accident." (*Id.* ¶¶ 14–15.) Butler then "drew his firearm" on Mr. Sweat and the passenger, and he yelled, cursed, and "order[ed] them to immediately leave." (*Id.* ¶¶ 16–17.) The local hospital eventually performed a consensual blood draw on Ms. Sweat. (*Id.* ¶ 19.)

The next day, Sweat's husband submitted a complaint with the Crump Police Department and reviewed a video recording of the events. (*Id.* ¶ 20.) The charges were eventually abandoned and dismissed. (*Id.* ¶ 21.) About a month after Sweat's arrest, Butler was "terminated for violation of the personal conduct policy" due to his involvement in a domestic dispute, during the course of which "he stated that he was 'untouchable' because he was a police officer." (*Id.* ¶¶ 22–23.)

Plaintiffs also claim that, prior to September 27, 2013, "Butler was alleged to have provided alcohol to a minor and allowed her to drive his squad car" and that "he was reported to have purchased beer while on duty." (*Id.* ¶ 24.) Further, they state that, "[u]pon information and belief," the officer had engaged in "improper and illegal conduct while employed with other departments." (*Id.* ¶ 25.) The Sweats also maintain that, "[t]o [their] knowledge, . . . Butler was never meaningfully disciplined for his use of force against [them]." (*Id.* ¶ 26.) According to Plaintiffs, "the video depicting the incident was erased []or destroyed, presumably to cover up the incident and impede civil action on it." (*Id.* ¶ 27.)

### III. Analysis

*A.     Applicable Law*

The Sweats assert claims against Crump pursuant to 42 U.S.C. §§ 1983 and 1988 arising out of violations of their rights under the Fourth Amendment to the United States Constitution. (*Id.* ¶¶ 1, 38–44.) Chapter 42, section 1983 of the United States Code was enacted to "protect[] citizens from violations of their federal rights by state officials." *Bradley v. Reno*, 749 F.3d 553, 558 (6th Cir. 2014). "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). To invoke these remedies, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A municipality or other local governmental entity is considered a "person" under the statute and may therefore be held liable for its actions depriving a plaintiff of her federal rights—commonly referred to as "*Monell* liability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). A municipality will not be liable, however, simply because it employs the alleged unlawful actor. *Id.* ("We have consistently refused to hold municipalities liable under the theory of *respondeat superior*."). Instead, "liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation . . . ." *Heyerman*, 680 F.3d at 648 (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)); *see also Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013) ("A municipality can be liable under 42

U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom or if a failure to train amounts to deliberate indifference to such rights." (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004)) (internal quotation marks omitted)). Thus, "[u]nder § 1983, local governments are responsible only for their own illegal acts" and will not be held vicariously liable for the actions of their employees. *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)). A plaintiff may invoke a custom, policy, or practice sufficient to state a claim for *Monell* liability by alleging "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Id.* at 386 (alterations in original) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Because municipalities do not incur *respondeat superior* liability under § 1983, "a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen" to avoid dismissal under Rule 12(b)(6). *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)).

B.   *Illegal Official Policy or Legislative Enactment*

A government's "official policies" include "decisions of its duly constituted legislative body," *Bryan Cnty.*, 520 U.S. at 403, as well as policies "officially adopted or established through the decision-making channels," *Doe v. Claiborne Cnty., Tenn. ex rel. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996). The Sweats have not identified an unconstitutional decision of a legislative body, nor have they alleged that Crump, through its

official decision-making process, has adopted a policy that led to the violation of their rights. Because Plaintiffs have "fail[ed] to identify any unlawful policy . . . on the part of the [c]ity which authorized the police officer['s] actions," they cannot rely on this category of *Monell* liability to overcome the 12(b)(6) motion. *Garner v. City of Memphis*, 576 F. App'x 460, 462 (6th Cir. 2014).

C.  *Inadequate Supervision and Training*

Inadequate supervision and training will give rise to municipal liability, "[i]n limited circumstances, [where] a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights . . . rise[s] to the level of an official government policy for purposes of § 1983." *Connick*, 131 S. Ct. at 1359. To establish "a failure to train or supervise claim," a plaintiff must sufficiently plead that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)); *see also DeSoto v. Bd. of Parks & Recreation*, __ F. Supp. 3d ___, 2014 WL 6680681, at *9 (M.D. Tenn. 2014) (applying *Regets* in the context of a 12(b)(6) motion). The legal standards for a claim of inadequate supervision and one of inadequate training are essentially the same. *See Okolo v. Metro. Gov. of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012) ("Liability for unconstitutionally inadequate supervision or discipline is treated, for all intents and purposes, as a failure to train.").

As it relates to their claim of inadequate supervision and training, the Sweats alleged in their complaint that, prior to the incident, Crump "developed and maintained policies or customs

6

exhibiting deliberate indifference to the constitutional rights of persons in the [c]ity . . . , which caused the violation of Plaintiffs' rights." (D.E. 1 ¶ 39.) They further asserted that "[i]t was the policy []or custom of . . . Crump . . . to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated . . . ." (*Id.* ¶ 40.) They contend that it was the city's "policy []or custom . . . to inadequately supervise and train its police officers, including [Butler], thereby failing to adequately discourage further constitutional violations on the part of its police officers. The [c]ity . . . did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct." (*Id.* ¶ 41.) Plaintiffs maintain that "[a]s a result," Butler thought his "actions would not be properly monitored by supervisory officers and that misconduct would . . . be tolerated . . . ." (*Id.* ¶ 42.) These "policies and customs," the Sweats state, "demonstrated [Crump's] deliberate indifference" and caused the alleged violation of their rights. (*Id.* ¶ 44.) But the Court need not accept as true "legal conclusions or unwarranted factual inferences." *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Terry*, 604 F.3d at 275–76). Here, these allegations are either "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Foster v. Michigan*, 573 F. App'x 377, 387 (6th Cir. 2014) (quoting *Iqbal*, 566 U.S. at 678), or "legal conclusions masquerading as factual allegations," *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Terry*, 604 F.3d at 275–76), and they will not aid Plaintiffs in establishing a factually plausible claim.

The Sweats have not otherwise plausibly stated that any deficiency in Crump's training or supervision rose to the level of deliberate indifference. The training or supervision of law enforcement officers gives rise to § 1983 liability only where it "amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Sanilac Cnty.*, 606

7

F.3d at 255 (emphasis in original) (quoting *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008)); *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 605 (6th Cir. 2012) ("[T]he training or supervision['s] . . . inadequacy [must have been] the result of the municipality's deliberate indifference . . ."). To establish deliberate indifference, a plaintiff ordinarily must "show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012) (quoting *Sanilac Cnty.*, 606 F.3d at 255). "Alternatively, [a] plaintiff[] could show deliberate indifference through evidence of a single violation of federal rights, accompanied by a showing that the [c]ity had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 794 (6th Cir. 2012) (citing *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)); *see also Bryan Cnty.*, 520 U.S. at 409. Plaintiffs have not sufficiently pled deliberate indifference through either of these avenues.

First, the complaint does not include facts that plausibly indicate that Crump ignored prior instances of unconstitutional conduct such that it had notice of deficient training in the particular area. The Sweats make only two allegations of misconduct occurring before the events giving rise to this suit: Butler "provided alcohol to a minor and allowed her to drive his squad car," and he "purchased beer while on duty." (D.E. 1 ¶ 24.) They also maintain that "[u]pon information and belief, [he] has had prior incidents of improper and illegal conduct while employed with other departments." (*Id.* ¶ 25.) The allegations related to the officer providing alcohol to a minor and purchasing alcohol on the job, if true, would certainly not be something to condone. But they do not relate to, as Plaintiffs put it, the use of "excessive and unnecessary force." (D.E. 9-1 at 11.) Complaints that "concern unrelated allegations of misconduct" will not

support a failure to train or supervise claim. *Smith v. City of Akron*, 476 F. App'x 67, 70 (6th Cir. 2012). Moreover, nothing in the complaint suggests that the city was made aware of or deliberately ignored these incidents. (*See* D.E. 1.) Likewise, the Sweats failed to indicate the nature of the "improper and illegal conduct" that occurred before Butler became employed by Crump, and nothing indicates that the city knew of it. (*See* D.E. 1 ¶ 25.) While these facts are "consistent with" the city's liability, they "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted).

Second, Plaintiffs have not adequately pled that the city failed to train officers to handle recurring situations that present an obvious potential for the use of excessive and unnecessary force. The Sweats claim that, because Crump "issues lethal weapons to its officers" who "are clothed with the authority to compel citizens to comply with their commands," the need for training and supervision with regard to the use of excessive force is obvious. (D.E. 9-1 at 10–11.) It is true that when a municipality arms its officers so that they can more effectively perform arrests, an obvious need arises to train them regarding "the constitutional limitations on the use of deadly force . . . ." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989). Plaintiffs must still plausibly allege, however, that the city's training or supervision was inadequate. *See Campbell*, 700 F.3d at 794 (requiring a "showing that the [c]ity had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation" for a failure to supervise claim under a single-violation theory).

To provide support for the city's lack of training and supervision, the Sweats rely on Butler's alleged misconduct at other departments, his conduct during the traffic stop in question, the city's "failure to discipline . . . Butler" after the incident, Crump's destruction of the video of

the events, and its "failure to make [the video] part of [Butler's] personnel file." (D.E. 9-1 at 11) (citing (D.E. 1 ¶¶ 10, 11–12, 16, 25–28, 42)).[2] Considered together, these facts do not indicate with plausibility that the city inadequately trained or supervised its officers regarding the use of excessive force. At the outset, the allegations do not make a failure to train claim plausible because none of them concern training practices or a lack thereof. Regarding a failure to supervise, Butler's conduct while employed with other departments has little, if any, bearing on Crump's supervision of its own officers. Plaintiffs' statements related to the lack of discipline after the incident and the loss or destruction of the video both arise out of the events in question. The Sixth Circuit has previously held, however, that "infer[ring] a municipal-wide policy based solely on one instance of potential misconduct" and the resulting "internal investigation" would turn "the municipal liability standard into a simple *respondeat superior* standard," a result precluded by Supreme Court precedent. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005) (citing *Bryan Cnty.*, 520 U.S. at 409; *Monell*, 436 U.S. at 694).[3] Moreover, the allegation of one instance of faulty supervision, without more, is insufficient to state a plausible claim that inadequate supervision "can justifiably be said to represent city policy." *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 n.2 (6th Cir. 2009) (quoting *City of Canton*, 489 U.S. at 390) (internal quotation marks omitted); *see also Minick v. Metro. Gov't of Nashville*, No. 3:12-CV-0524, 2014 WL 3817116, at *2 (M.D. Tenn. Aug. 4, 2014) ("In numerous cases, courts . . . have found that boilerplate allegations premised on a single incident of alleged police

---

[2] Plaintiffs also point to the fact that "they have alleged that a lack of supervision and training on the use of force led to the constitutional violation they suffered." (*Id.*) (citing D.E. 1 ¶¶ 40–44). As previously noted, though, the Court need not accept the truth of this conclusory statement.

[3] Although *Thomas* concerned the grant of a summary judgment, s*ee id.* at 427, its rationale is applicable in the 12(b)(6) context. *See, e.g.*, *Chacon v. Clarksville Police Dep't*, No. 3:12-CV-00884, 2012 WL 6699655, at *4 (M.D. Tenn. Dec. 21, 2012); *Okolo*, 892 F. Supp. 2d at 945; *Thompson v. Flaherty*, No. 2:08-CV-500, 2010 WL 3667013, at *5 (S.D. Ohio Sept. 14, 2010).

brutality—*i.e.*, the incident that caused the plaintiff's injury—are insufficient to state a municipal liability claim, thereby justifying dismissal under Rule 12(b)(6).").

D.  *Inadequate Screening*

The Sweats also claim that Crump is liable for its employees' inadequate screening of Butler during the hiring process. (D.E. 9-1 at 11–13.) A failure to screen applicants for law enforcement positions rises to the level of deliberate indifference "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right . . . ." *Bryan Cnty.*, 520 U.S. at 411. It is insufficient for Plaintiffs to rely "on the mere probability that any officer inadequately screened will inflict any constitutional injury." *Id.* at 412. Instead, the alleged facts must plausibly show "that *this* officer was highly likely to inflict the *particular* injury suffered . . . ." *Id.* (emphasis in original); *see also Ortega v. Roulhac*, No. CIV.A. 13-4717, 2015 WL 337394, at *14–15 (E.D. Pa. Jan. 22, 2015); *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, __ F. Supp. 3d ___, 2014 WL 4273300, at *12 (M.D. Pa. 2014); *Wilson v. Trumbull Cnty. Dep't of Job & Family Servs.*, No. 4:12 CV 02163, 2013 WL 5820276, at *12 (N.D. Ohio Oct. 29, 2013). These requirements avoid the "serious federalism concerns" that would arise if "particular hiring requirements that States have themselves elected not to impose" became constitutionally required. *Bryan Cnty.*, 520 U.S. at 415.

In their complaint, Plaintiffs state that the city "failed to adequately screen . . . Butler before hiring him, and the harm claimed was the plainly obvious consequence of the hiring decision . . . ." (D.E. 1 ¶ 43.) As earlier, this constitutes a legal conclusion that the Court need not accept as true. The Sweats also allege that, "[u]pon information and belief, . . . Butler . . . had

11

prior incidents of improper and illegal conduct while employed with other departments . . . ." (*Id.* ¶ 25.) This is insufficient to state a plausible claim for municipal liability on a failure to screen theory. Plaintiffs do not provide any facts displaying a connection between prior incidents of misconduct and the harm suffered in this case. The mere existence of *some* prior misconduct does not show with plausibility that Butler was highly likely to inflict the *specific* injury that the Sweats claim to have suffered—being subjected to excessive force in the execution of an arrest.[4]

Applying *Twombly* and *Iqbal*, other courts in this circuit have dismissed failure-to-screen claims under Rule 12(b)(6) where the complaint contained "[n]o allegations about [an officer]'s background . . . ." *Okolo*, 892 F. Supp. 2d at 945; *see also, e.g.*, *Wilson*, 2013 WL 5820276, at *12 ("Plaintiffs plead no factual allegations suggesting that, in hiring and retaining Defendants . . . , the County was deliberately indifferent to the risk that they would violate Plaintiffs' constitutional rights. There are no allegations in the Complaint suggesting that some deficiency in Defendants['] . . . history or background would make it 'highly likely' that they would inflict the 'particular injury' suffered by Plaintiffs . . . ."); *Mitchell v. Grasha*, No. 1:12CV2181, 2013 WL 2552040, at *4 (N.D. Ohio June 10, 2013) ("There is no allegation of any 'red flags' or warning signs in the officers' background or personnel files, which 'would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be a deprivation of a third party's federally protected right.' Plaintiff's [c]omplaint contains even less than the 'threadbare recitals of the elements of a cause of action' which were criticized in *Twombly*." (citations omitted)); *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-0589, 2010 WL 3619790, at *3 (M.D. Tenn. Sept. 13, 2010) ("There is

---

[4] Plaintiffs also cite "a continued pattern of improper and[] illegal behavior, including the incident at issue in this case," in support of their failure-to-screen theory of *Monell* liability. (D.E. 9-1 at 13.) These post-hiring occurrences do not, however, address Crump's screening procedures. Moreover, as previously discussed, the incidents the Sweats identified were not related to arrests or the use of force. Accordingly, they do not support the requisite connection between the city's hiring practices and the specific injury Plaintiffs' suffered.

no factual underpinning from which a conclusion plausibly could be drawn that there was anything in the backgrounds of these police officers to alert Metro that hiring them would result in the deprivation of a citizen's constitutional rights, and that Metro was deliberately indifferent to the risk posed.").

The Sweats attempt to distinguish this line of reasoning by arguing that "Plaintiffs did not simply allege that the City was deliberately indifferent in hiring . . . Butler." (D.E. 9-1 at 13.) These cases, however, do not indicate that making *any* allegation concerning an officer's misconduct prior to being hired would suffice to state a plausible failure-to-screen claim. More is required before the Court can "draw the reasonable inference that the [municipality] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Because the hiring official must have "disregarded a known or obvious risk" that Butler would have committed the *specific* type of violation alleged to have occurred, *Bryan Cnty.*, 520 U.S. at 412, generally alleging pre-employment "improper and illegal conduct" does not make *Monell* liability plausible.

*E.     Custom of Tolerance of or Acquiescence to Federal Rights Violations*

For purposes of *Monell* liability, a "custom" is a practice that "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," even though it is not formally approved. *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495–96 (6th Cir. 2008) (quoting *Bryan Cnty.*, 520 U.S. at 403–04); *see also Doe*, 103 F.3d at 508 ("In short, a 'custom' is a 'legal institution' not memorialized by written law." (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993))). The Sweats claim that the city engaged in investigative and disciplinary practices that amounted to a custom of tolerance of or acquiescence in the violation of citizens' federal rights. (*See* D.E. 9-1 at 6–8.)

In their complaint, Plaintiffs state that "[i]t was the policy []or custom of . . . Crump . . . to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the [c]ity. . . ." (D.E. 1 ¶ 40.) As a result, they maintain, Crump's "police officers . . . , including . . . Butler, believed their actions would not be properly monitored by supervisory officers and that misconduct would be investigated or sanctioned, but would be tolerated . . . ." (*Id.* ¶ 42.) As previously discussed, the Court need not accept these "legal conclusions or unwarranted factual inferences" as true. *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Terry*, 604 F.3d at 275–76).

To provide factual support, the Sweats point to Butler's conduct while employed with other departments, the destruction or erasure of the video, and Crump's failure to "meaningfully discipline[]" Butler for the events in question. (D.E. 9-1 at 7–8) (citing D.E. 1 ¶¶ 25–27). Taken as true, these facts still fail to allege a plausible custom-of-tolerance claim. For such a claim to survive a motion to dismiss, Plaintiffs must "demonstrate[] a pattern of inadequate investigation of similar claims . . . ." *Burgess*, 735 F.3d at 478 (citing *Thomas*, 398 F.3d at 433). Likewise, a "purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability." *Sexton v. Kenton Cnty. Det. Ctr.*, 702 F. Supp. 2d 784, 791 (E.D. Ky. 2010) (quoting *Meas v. City & Cnty. of San Francisco*, 681 F. Supp. 2d 1128 (N.D. Cal. 2010)). Butler's conduct while employed in other departments is not relevant to Crump's investigative or disciplinary practices concerning the conduct of its own officers, and the other facts relate to a single instance of alleged misconduct—the use of force against the Sweats. These assertions are therefore insufficient to create liability for the city.

F.   *Ratification of Illegal Conduct*

Even if no pattern of insufficient investigation or discipline is established, a municipality may still incur liability under a ratification theory. *See Burgess*, 735 F.3d at 479. Ratification requires a plaintiff to show that "(1) a final municipal policymaker approved an investigation . . . (2) . . . so inadequate as to constitute a ratification of the[] alleged constitutional violation." *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 861–62 (N.D. Ohio 2011) (alterations in original) (quoting *Wright v. City of Canton, Ohio*, 138 F. Supp. 2d 955, 966 (N.D. Ohio 2001)) (internal quotation marks omitted). As the Sixth Circuit recently noted, "[a] single decision can constitute a policy, if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). This "means that [the official's] decisions [must be] 'final and unreviewable and . . . not constrained by the official policies of superior officials.'" *Id.* at 175 (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005)).

Although the Sweats attempt to travel under a ratification theory, (*see* D.E. 9-1 at 7–8), they have failed to allege facts indicating the involvement of a final policymaker in the investigation or discipline of Butler. The complaint does not identify an official with final decision-making authority, nor does it state that such an official approved an investigation. The Sweat's ratification claim, therefore, is inadequate.[5]

---

[5] Plaintiffs attempt to use *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985), in support of their inadequate investigation and discipline claims. They argue that "the Sixth Circuit held that [a s]heriff's failure to investigate and discipline gave rise to not only supervisory liability, but also municipal liability due to the [s]heriff's position as final policymaker for the [c]ounty." (D.E. 9-1 at 7) (citing *Marchese*, 758 F.2d at 188–89). This line of reasoning, however, misses the point. Because the Sweats fail to allege the involvement of a final policymaker, sheriff or otherwise, they do not properly state a claim under a ratification theory. Moreover, they fail to plausibly show an

15

## IV. Conclusion

Based on the foregoing, the city's motion to dismiss is GRANTED. The claims against Crump are DISMISSED WITH PREJUDICE because Plaintiffs have failed to sufficiently plead *Monell* liability. As no claims remain against it, the city is DISMISSED from this action.

IT IS SO ORDERED this 9th day of March 2015.

    s/ J. DANIEL BREEN
    CHIEF UNITED STATES DISTRICT JUDGE

---

overarching lack of "serious investigation . . . or official sanctions . . . ." *Marchese*, 758 F.2d at 188. Their reliance on *Marchese* and its progeny is, therefore, misplaced.